JOSEPH STARK et al. v. GEORGE HUNTON et al.

If the collection of a debt due an estate is neglected by the executors for three years, and the debtor then fails, the executors will be held accountable for the amount.

If the executors, in their discretion, are satisfied that there is nothing due the estate upon a claim included in the inventory and appraisement, they will not be charged with the amount unless it be made to appear that the amount was really due.

If the executor take no step for two years for the recovery of a note, and the maker becomes insolvent, such negligence will charge the executor. It cannot be reconciled with good faith or the exercise of a sound, reasonable discretion.

The true rule in computing interest is, that where partial payments are made exceeding the interest due, the surplus is to be deducted from the principal, and the balance forms a new principal on which to compute interest; but where the payments do not equal the interest due, no deduction is made, and interest is cast on the principal until the payments exceed the amount of interest.*

If an executor, without inquiry or examination, pay a claim against the estate where nothing is really due, he will be charged with the amount.

* Accord. Meredith v. Banks, 1 Hals. 408; Connecticut v. Jackson, 1 John. Chan. R. 17; Stoughton v. Lynch, 2 Ibid, 209; Lightfoot v. Price, 4 Hen. and Munf. 431; Williams v. Houghtaling, 3 Cowen, 87, note a.

[Stark v. Hunton.]

Where a claim is barred by the statute of limitations, at the time of the testator's death, and the debt is to be satisfied out of the real estate, both the executors and the devisees have a right to avail themselves of the statute in defence, and no acknowledgment of the personal representative will bind the lands in the hands of the devisee.

But where a claim is not barred by the statute at the testator's death, though no proceedings are had against the heir or devisee within six years from the time the action accrued, the claim will not therefore be considered as barred by the statute, but shall be paid out of the proceeds of the land when sold for the payment of debts.

* BILL filed on the eleventh of July, eighteen hundred and twenty-nine, by Joseph Stark, administrator of Jane Stark, formerly Jane Weller, deceased, and in his own right; Alexander C. Stark and Benjamin W. Stark, infants, by Joseph Stark their next friend; and by Daniel K. Allen and Mary his wife, late Mary Weller.

The bill states, that Benjamin Weller, late of Aquackanonck, in the county of Essex, being seized and possessed of considerable real and personal estate, on the sixth of June, A. D. eighteen hundred and twenty-three, executed and published his last will and testament in due form of law to pass real estate, as follows: that is to say, "Be it remembered, that I, Benjamin Weller, of Paterson, in the county of Essex, and state of New-Jersey, do make and publish this my last will and testament, in manner and form following; that it to say, *First*, it is my will and I do hereby direct my executors herein after named, to pay all my just debts and funeral expenses out of my personal estate, and out of the proceeds of such of my real estate as is herein after directed to be sold by my executors.

"*Secondly*, I give, devise and bequeath unto my wife Jane, all my tavern-house and lot where I now live, together with the furniture and stock in the same: to have and to hold to my said wife Jane during her natural life, provided she remains my widow; but in case she should marry again, then it is my will that my said tavern-house and lot and furniture be disposed of according to law.

* See Saxton, 216.

"And it is my will, and I do hereby order and direct my executors herein after named, or the survivor or survivors of them, to sell, dispose of and convey my hat-shop and lot on the corner of the old York road and turnpike road in the town of Paterson; also, a half-acre lot, and a small lot of about forty feet front, situate on the road leading from Paterson to the white house, or either of them, as my executors may think necessary or proper for the interest of my widow and children: and it is my will that the proceeds of the sale of said lots or of such of them as my executors shall sell, shall be applied to the payment of my debts.

"And I do hereby constitute and appoint my wife Jane executrix, and doctor William Ellison and Philemon Dickerson, of Paterson, executors of this my last will and testament."

The testator died on the eleventh of June, eighteen hundred and twenty-three, leaving four daughters, (viz. Jane, who intermarried with the complainant, Joseph Stark; Mary, who intermarried with D. K. Allen; Elizabeth, and Margaret,) and three sons—his only children and heirs at law.

That the widow, Jane Weller, and P. D., shortly after the testator's death, duly proved the said will and took upon themselves the burthen of the execution thereof, and possessed themselves of the personal estate and effects of the said testator, and on the eleventh of October, A. D. eighteen hundred and twenty-three, made and filed an inventory and appraisement thereof in the surrogate's office of the county of Essex, amounting to four thousand seven hundred and eighty-one dollars and fifty-nine cents.

That on the twentieth of March, A. D. eighteen hundred and twenty-four, the executors sold and conveyed part of the testator's real estate, consisting of the hat-shop and lot in Paterson, to one J. F., for eight hundred and fifty-five dollars: that the further sum of three hundred dollars had been paid to the executors for a lot of land which belonged to the testator, situate in the county of Bergen; but that the half-acre lot, and a small lot of about forty feet front situate on the road leading from Paterson

[Stark v. Hunton.]

to the white house, and by the will of the said testator directed to be sold, remain undisposed of.

That Jane Weller, the widow of the testator, accepted the gift, devise and bequest intended for her in said will, and thereby became barred of her dower in the real estate of the testator; and by virtue of said devise and bequest, she took possession of the tavern-house and lot, and with the consent of the said P. D., executor as aforesaid, she also took possession of the furniture in the said tavern-house, subject to the proviso contained in said will, viz.—to have and to hold to her during her natural life provided she remained his widow, but in case she should marry again then that the said tavern-house and lot and furniture should be disposed of according to law.

That the said Jane, the widow of testator, on the twelfth of November, eighteen hundred and twenty-eight, intermarried with G. H., and thereby forfeited all right and interest in the gift, devise and bequest intended for her in said will, and that the fact of said marriage was known to the said P. D.

That the said Jane, the testator's widow, had always since the death of the testator lived upon the premises devised to her, and taken the rents, issues and profits thereof, and also used and enjoyed the stock and furniture in the same, until her intermarriage with G. H. That shortly after his marriage with the said Jane, the said G. H. took possession of the premises previously occupied by her, and has since continued to reside therein: that he also, with the consent of the said P. D., executor as aforesaid, possessed himself of the furniture held by the said Jane, and sold a part thereof, and still keeps possession of the residue; and has also, with the said Jane, entered into the possession and receipt of the rents, issues and profits of the real estate, devised to the said Jane as aforesaid.

That Jane Stark, one of the daughters of the testator, died on the nineteenth of April, A. D. eighteen hundred and thirty-eight, intestate, leaving A. C. S. and B. W. S., two of the complainants, both infants under the age of fourteen years, her chil-

dren and heirs at law, and that administration of her estate was duly granted to the complainant, J. S.

Prayer, that the will of the said testator may be established and its trusts carried into execution : that a receiver may be appointed of the rents and profits of the real estate devised to the said Jane, and that an injunction may issue to restrain the said G. H. and Jane his wife from receiving any of the said rents, or any of the assets belonging to the estate of the said testator.

A decree pro confesso was taken as to part of the defendants, and after various proceedings in the cause it was referred to a master to take an account of the personal estate of the said testator, and also of moneys received from the sale of the real estate. The master having made his report, exceptions were taken to the report by D. K. Allen and wife, two of the complainants, and the cause now came on for hearing upon the exceptions.

*E. Vanarsdale, jun.* for exceptants.

*Dickerson* and *I. H. Williamson*, for the executors.

THE CHANCELLOR. The first exception is, that the master has omitted in schedule 1, to charge P. Dickerson, executor, with the sum of eighty-four dollars and ninety-three cents, received by him from Joseph Law ; and also the sum of one hundred and twenty-four dollars and thirty-four cents, received by him from the sale of the hat-shop, over and above what he is charged with on that account.

The first part of this exception has originated out of the mode in which the master has stated the account. The estate had a claim against Joseph Law of ——— dollars, which constituted a part of the inventory. Hunton and wife are credited for the amount of this claim, as having come to the hands of P. Dickerson, the co-executor. In his account he is not charged with it. Hence it would appear to have been omitted by some casualty. The truth is, however, that Law had an account against the estate of a larger amount, and this claim was taken to pay that

account; and after satisfying it as far as it would, there was still a balance due Law from the estate of three dollars and ninety-four cents, which was paid by Mr. Dickerson, and for which he has a receipt and is credited. Vide Exhibit A. No. 22, on the part of the executors. The better way, perhaps, would have been, to charge Dickerson with the amount for which Hunton and wife were credited, and then to have credited him with the whole amount of Law's account. It would have swelled the account; but as the claim against Law was in the inventory, and had to be accounted for in some way, it would have rendered the statement more intelligible, and probably saved the exception. It is, however, substantially right as it stands.

The sum of one hundred and twenty-four dollars and thirty-four cents, mentioned in the second part of the exception, is included in the master's report. The hat-shop was sold for eight hundred and fifty-five dollars. Dickerson charges himself with seven hundred and thirty dollars and sixty-six cents, in his separate account. The balance being due from doctor Ellison, the purchaser, is credited on a note which he held against the estate, and is therefore justly accounted for. See Schedule 9 to master's report.

This first exception must be overruled.

The second exception is admitted to be well taken, and is alleged by the executor to be a casual mistake on the part of the master.

The third exception is to a credit allowed to them of one hundred and ninety-four dollars and twenty-one cents, for moneys paid by Hunton and wife to the Paterson Lodge, per A. Parsons.

The account paid is against Benjamin Weller the testator, as treasurer of the Lodge, commencing in eighteen hundred and twenty-two, and ending in March, eighteen hundred and twenty-three. The receipt is dated January twenty-sixth, eighteen hundred and thirty-two, is signed by A. Parsons, and states that the money was paid by Mrs. Jane Hunton, executrix of Benjamin Weller, deceased.

Mrs. Hunton, in her examination, says, she does not know

any thing of the settlement of this account; that if she was present at the time she must have forgotten it, and that she has never paid any thing to Mr. Parsons on account of the Lodge. She says, however, that she always knew there was such an account. Mr. Parsons has also been examined on the subject. The testimony of both taken together, shows the fact of the account, the acknowledgment of it by Benjamin Weller in his life time, and its subsequent settlement by Parsons, who was authorized by the Lodge to settle their accounts generally. Parsons expressly states that he has received the amount mentioned in the receipt; and the strong probability is, as the settlement was made after the marriage, that it was made with the husband, and the receipt taken in her name as executrix. This reasonable presumption reconciles the apparent discrepancy which exists, and satisfies me in overruling the exception.

Exception 4. The fourth exception is to sundry allowances made by the master for bad debts, viz. :—

| | | | | | |
|---|---|---|---|---|---|
| Robert King, | - | - | - | - | $ 35 65 |
| James Brooks, | - | - | - | - | 20 16 |
| James McGee, | - | - | - | - | 7 37 |
| James Drummond, | - | - | - | 3 69 |
| Adna Allen, | - | - | - | - | 11 12 |

As to Robert King, the testimony of John K. Flood is sufficient to show that the amount of the demand against him might have been collected at any time within three years after the death of the testator. If the money was due, and there is nothing to show that it was not, I see no reason why the executors should not be charged with it. King was in business in Paterson—a near neighbor; and if the collection of the money was neglected for the space of three years, and then the debtor failed, the executors should be made to respond for the amount.

James Brooks. It appears from the testimony that he was able to pay; but Mr. Dickerson says in his examination, that he alleged there was nothing due. The executors, in their discretion, have thought right to be satisfied, that there was really no just claim against Brooks, and have therefore made no effort to

collect the amount appraised, or any part of it. There is nothing to show that they acted imprudently, or that the fact is different from what it was represented, and therefore I cannot say they should be charged. The credit should have been under the head of debts not due, and not bad debts. That it was not, is probably the cause of this part of the exception.

The other allowances made by the master are correct. The exception is disallowed as to all except the credit for Robert King's account.

The fifth exception is to an allowance for the sum of thirty-five dollars for two riding-chairs sold to P. S. Vanhouten, on the ground that the money had been lost by the insolvency of the debtor.

In my opinion this exception should be allowed. The property was sold to Vanhouten in eighteen hundred and twenty-seven, some years after the death of the testator. Jane Weller took his note payable to herself individually, and not as executrix, in four months, at the Paterson bank. In July, eighteen hundred and twenty-nine, he was discharged under the insolvent laws of the state.

From the time at which this property was sold, and the manner in which the note was taken, it may fairly be inferred that Mrs. Weller intended to treat the property as her own, and account to the estate for the value of it. But independently of these circumstances, I think she is justly chargeable for neglect in not collecting the money, when, for aught that is made to appear, it might have been collected without difficulty. The note was payable at bank, but there is no evidence that it was ever presented there for payment, or that any steps whatever were ever taken for its recovery. Two years after the making of the note, the maker applied for and obtained his discharge. In my opinion such negligence should charge the executor. It cannot be reconciled with good faith, or the exercise of a sound, reasonable discretion.

Exception 6. The master, in Schedule No. 6, attached to his report, has exhibited a general account of all the assets, real as

[Stark v. Hunton.]

well as personal, that have come to the hands of the executrix, Mrs. Hunton, to be administered, and of her payments and disbursements out of the same. According to this account there is a balance in her hands of three hundred and eighty-seven dollars and eighty-three cents. On this balance no interest has been computed by the master, and his omission to charge it forms the ground of the sixth exception.

It does not distinctly appear from the schedule referred to, how long this balance has been in the hands of the executrix. It was said in argument, and not denied, that it has been in hand since eighteen hundred and thirty-one. If this be so, interest should be charged; as there were debts due from the estate, to the payment of which it could and ought to have been applied. It was said in answer to this complaint, that although interest was not charged on the balance, it was charged on the items of which the balance was composed. This does not appear to be the case; at least I am not able to perceive it in the account as stated; and as the account must go back to the master for some correction, I shall direct him to charge interest on the balance during the time it appears to have been in her hands unemployed.

Exception 7. The master has allowed three hundred and three dollars and ninety-seven cents for repairs to the real property, and this also is excepted to.

After the marriage of Mrs. Hunton, in eighteen hundred and twenty-eight, she and her husband became liable to pay rent for the property they occupied belonging to the estate. The master has fixed the annual rent at two hundred and ten dollars, to which no objection appears to be made. The different sums paid for repairs up to eighteen hundred and thirty-three, are specifically set forth in the account; and although the amount is considerable, yet taking into consideration the nature and situation of the property, I am not prepared to say the master has erred.

It was objected by the complainants that a claim for repairs cannot be set off against a demand for rent. This is technically correct, and if this were a suit at law, brought for the recovery of rent under an agreement, the objection would be sustained.

But the object in this court is to make a final settlement and distribution of this whole estate, and with this view, the master was directed, in taking the account, to make to the parties all just allowances. The claim itself being a just and equitable one, I see no reason to dissent from the report of the master upon this point, and shall disallow the exception.

Exception 8. This exception refers to the sum of eight hundred and twenty dollars and twenty-six cents, reported to be due to the Paterson bank; and to the sum of two thousand and seventy-one dollars and sixty-six cents, reported to be due to the executors of doctor William Ellison, deceased.

The debt to the estate of Ellison appears to be a just debt, due on a note given by Weller, the testator, shortly before his death. In making out the amount two errors have been committed. The master, in making the computation, inadvertently, I presume, has in one instance calculated compound interest, by adding a balance of unpaid interest to the principal, and then calculating interest on the whole. Thus, on the thirty-first of March, eighteen hundred and twenty-four, there was a balance due on the note of sixteen hundred and twenty-three dollars and thirty-eight cents. Interest is cast on this to the twenty-eighth July, eighteen hundred and twenty-nine, amounting to six hundred and three dollars and five cents. On that day there was paid three hundred and four dollars and eighty-two cents. This is deducted from the amount of principal and interest then due, and interest is then cast on that balance; which is in truth adding the balance of unpaid interest to the principal, and casting interest on the whole. This cannot be right. Partial payments of interest can never increase the principal of the debt. The true rule, and I believe the practice in all our courts, is this; where partial payments are made, exceeding the interest due, the surplus is to be deducted from the principal, and the balance forms a new principal on which to compute interest; but when the payments do not equal the interest due, no deduction is made, and interest is cast on the principal until the payments exceed the amount of interest, and then such excess is to be deducted from the principal, and

interest is computed on that balance. The same rule is established in New-York: *Connecticut* v. *Jackson,* 1 *John. Chan. R.* 13.

The other error is the allowance to doctor Ellison of a payment made to B. W. Lyon, on the twenty-seventh of February, eighteen hundred and twenty-seven, of eleven dollars and seventy-five cents, with interest to October, eighteen hundred and thirty-four, amounting in the whole to sixteen dollars and seventy-seven cents. This must have been a payment of a claim of Lyon's against the estate. If doctor Ellison paid this as an executor, (although it appears he never proved the will,) he paid it in his own wrong, for this same Lyon was actually a debtor to the estate in just about the same amount, and for that debt the executors have claimed a credit, alleging it to have been a bad debt, and the master has allowed it. It is evident, then, there was really nothing due from the estate; and if doctor Ellison paid this as executor, without inquiry or examination, it cannot be allowed him. If he paid it as an individual, he has no other rights than Lyon had; and the claim of the estate against Lyon is a just offset. In these two particulars the report of the master, as to the Ellison debt, must be corrected.

As to the claim of the Paterson Bank, it is proved by the testimony of Andrew Parsons, formerly the cashier. The whole amount is eight hundred and seventeen dollars and sixty-six cents, of which about three hundred and seventy dollars is for interest, computed to the eleventh of July, eighteen hundred and thirty-three. The exceptants insist that the whole was barred by the statute of limitations, and ought not to have been paid, inasmuch as the payments were from the land which was devised. On inspecting the items of the account, it appears that they are from March thirty-first, eighteen hundred and nineteen, to twentieth of May, eighteen hundred and twenty-two. Benjamin Weller died in eighteen hundred and twenty-three. None of them were barred by the statute at the time of his death. Mr. Parsons states that the account was spoken of to Mr. Dickerson and doctor Ellison shortly after the death of Mr. Weller, and

payment urged : they said they were not in funds, but when they were in funds they would pay the account : and further, that Mr. Dickerson was most frequently spoken to on the subject.

Under this state of facts, I think the allowance by the master is correct. It was a debt due and existing when the testator died, and all his property, real or personal, whether given or devised, constituted a fund for its payment. Demand for payment was made, and payment was promised. All was done in good faith on both sides, and I cannot doubt that the payment was properly made, though out of the proceeds of the lands devised. No rights of the devisees or heirs have been taken away or interfered with by the executors. The land has been ordered to be sold for the payment of the debts of the testator ; that is, the debts due from him at the time of his decease. It would be hard equity as against the creditor to say, that because he waited at the solicitation and on the promise of the personal representatives, and did not run either the executors or devisees to expense in collecting a bona fide debt, actually due, he is now to be met by the statute of limitations, and have his debt taken away.

If the claim had been barred by the statute when the testator died, the case would have been different. Both executors and devisees would have had a right to avail themselves of the defence ; and it has been held in such cases, that no act or acknowledgment of the personal representatives shall bind the lands in the hands of the devisees : *Mooers* v. *White*, 6 *John. Chan. R.* 360 ; *Thomas* v. *Peter and Johns, adm'rs, &c.,* 12 *Wheat.* 565. Those cases arose upon very stale claims, and it is unnecessary to discuss the principles laid down by the courts in deciding them. They do not reach this case, though some of the reasoning employed in them may seem to cover it.

The principle contended for in the exception is this, that when debts are due and owing at the time of the testator's death, and no proceedings are had against the heir or devisee within six years from the promise, if it be a simple contract debt, that for default of such proceeding against the heir or devisee, the claim

[Stark v. Hunton.]

shall be considered as barred by the statute, and shall not be paid out of the proceeds of the land, where it has been sold for the payment of debts. This I am not prepared to assent to, and shall disallow the exception so far as concerns this point.

The ninth exception is, to an allowance made by the master for money due to Ralph Doremus for improvements made by him to the property he leased of Jane Weller before her marriage.

By the will this property was given to the widow to enjoy during widowhood. She leased to Doremus in February, eighteen hundred and twenty-eight, and covenanted to pay for the improvements he might make. By the marriage, her right to the property was forfeited, and went to those legally entitled. She is bound by her covenant to pay Mr. Doremus, and he can have no claim against the estate. He made no contract with the executors, nor is there any liability on their part to pay any thing to him.

If, however, Mrs. Hunton, after paying Doremus, may lawfully recover it from the heirs, it will lead to the same result, and the sum may as well be allowed in the present account. But I do not see that such would be the case. She made the lease in her own name, and caused the improvements to be made on her own responsibility. She treated the property as her own, and my impression is that she can make no claim for remuneration. At all events, the exception is well taken to the account as it now stands.

Let the report be returned to the master, to be corrected, according to the opinion of the court.

Order accordingly.